IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA WAYNE VINYARD,<br><br>    Petitioner,<br><br>  v.<br><br>JOE A. LIZARRAGA,[1] Warden, Mule Creek State Prison,<br><br>    Respondent. | No. 2:12-cv-02084-JKS<br><br>MEMORANDUM DECISION |

  Joshua Wayne Vinyard filed a counseled Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Vinyard is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Mule Creek State Prison in Ione, California. Respondent has answered, and Vinyard has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

  A jury found Vinyard guilty of assault by means likely to produce great bodily injury and battery causing serious injury and found that he personally inflicted great bodily injury. The trial court found that Vinyard had a prior strike and prior serious felony and sentenced him to 12 years' imprisonment.

  Through counsel, Vinyard directly appealed, arguing that: 1) trial counsel was ineffective for revealing during voir dire that Vinyard had previously been convicted of a sex crime involving a child; 2) trial counsel's error during voir dire violated his Sixth Amendment right to

---

  [1] Joe A. Lizarraga, Warden, Mule Creek State Prison, is substituted for Randy Grounds, former Warden, California Correctional Training Facility. FED. R. CIV. P. 25(c).

a fair trial; 3) trial counsel's error during voir dire violated his right to due process of law; 4) trial counsel was ineffective for failing to cross-examine victim David Acuna regarding whether his tattoos were indicative of gang membership; 5) the trial court "denigrated [his] constitutionally protected right to testify" in determining that his prior sex-crime conviction could be introduced for impeachment purposes; 6) the prosecution violated his right to a fair trial and due process by failing to disclose to the defense evidence that Acuna had tattoos indicative of gang membership; and 7) there was insufficient evidence to convict him of assault by means likely to produce great bodily injury.

The California Court of Appeal unanimously affirmed the judgment in a reasoned opinion.

Vinyard then filed a counseled petition for writ of habeas corpus with the California Supreme Court, arguing that: 1) trial counsel was ineffective for revealing during voir dire that Vinyard had previously been convicted of a sex crime involving a child; 2) trial counsel's error during voir dire violated his Sixth Amendment right to a fair trial; 3) trial counsel's error during voir dire violated his right to due process of law; 4) trial counsel was ineffective for failing to cross-examine victim David Acuna regarding whether his tattoos were indicative of gang membership; and 5) the prosecution violated his right to a fair trial and due process by failing to disclose to the defense evidence that Acuna had tattoos indicative of gang membership.

The supreme court summarily denied the petition.

Vinyard timely filed his Petition for Writ of Habeas Corpus with this Court on August 8, 2012.

II. GROUNDS RAISED

In his Petition before this Court, Vinyard argues as follows: 1) trial counsel was ineffective for revealing during voir dire that Vinyard had previously been convicted of a sex crime involving a child; 2) trial counsel's error during voir dire violated his Sixth Amendment right to a fair trial; 3) trial counsel's error during voir dire violated his right to due process of law; 4) trial counsel was ineffective for failing to cross-examine victim David Acuna regarding whether his tattoos were indicative of gang membership; and 5) the prosecution violated his right to a fair trial and due process by failing to disclose to the defense evidence that Acuna had tattoos indicative of gang membership.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

-3-

relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 778-79 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  Ineffective Assistance of Counsel Standard

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Vinyard must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

B.   Merits

<u>Trial counsel's mention during voir dire of Vinyard's prior conviction (claims 1, 2, & 3)</u>

Prior to voir dire, the trial court ruled that Vinyard's 2003 conviction for lewd or lascivious conduct with a child under the age of 14, under California Penal Code ("CPC") § 288(a), was admissible for impeachment purposes should Vinyard testify.

During voir dire, defense counsel and the court addressed the venire about the presumption of innocence.  Defense counsel then stated as follows:

> The defendant will take the stand and testify on his own behalf.

-5-

> He has a criminal record.
> In 2003, he was arrested for having sex with a 13 year old girl. He was convicted [on] April 16th of 2004. This charge is called specifically [CPL §] 288(a). Any person who willfully and unlawfully commits any lewd or lascivious acts, including any of the acts constituting other crimes, upon the body or any part, member thereof of a child under age 14 years old with intent of arousing [or] appealing [the] sexual desires of the person or the child is guilty of a felony.
> Now, once again, I'll ask the question: Is there anybody in here right now that after hearing of his prior record, can say—you have to be honest about it—
> Except for when he was actually testifying, and I'll gone [sic] in just a second, and you're setting [sic] in here thinking about the believability of his testimony, that's the only purpose, with the exception of that, is there anyone here who can tell they cannot set aside the fact that he has a prior record and judge these facts in this case independently?

One juror raised her hand and, following voir dire by both parties, was excused for cause.

Vinyard argues in his Petition before this Court that his trial counsel was ineffective for revealing during voir dire that Vinyard had previously been convicted of lewd and lascivious conduct with a child under the age of fourteen, for promising the jury venire that Vinyard would testify, and for refusing to allow him to testify. Vinyard additionally claims that trial counsel exacerbated the prejudicial effect of revealing his prior conviction by stating that Vinyard had been convicted of sex with a child, when he had actually been convicted of lewd and lascivious conduct with a child under the age of 14. Vinyard further argues that by disclosing his prior conviction, "counsel uttered prejudicial statements whose effect was to unduly prejudice the jury against [him] and deny him . . . the right to a fair trial, due process of law and effective assistance of counsel."

The California Court of Appeal denied Vinyard relief on these interrelated claims as follows:

> . . . .
> The record shows that at the time trial counsel acted, defendant planned to testify and the trial court had ruled the conviction would be used to impeach defendant. In the face of the trial court['s] ruling admitting the prior for impeachment, trial counsel quite

obviously sought to soften the blow by raising the point himself, and tried to minimize the harm to defendant by ascertaining during voir dire whether any juror would be unable to look beyond the conviction. Trial counsel's tactical decision proved wise, for it turned out one juror admitted an inability to do so and was excused.

Appellate counsel quibbles that trial counsel referred to the prior conviction as "having sex with a 13[-]year[-]old child" when the prior conviction was technically for lewd and lascivious conduct with a child under the age of 14. But trial counsel read the definition of the crime to the prospective jurors, and in any event, the crime had to involve some kind of lewd or lascivious contact with a child no older than 13, with a sexual intent. ([*See* CPL]§ 288, subd. (a).) It may be that appellate counsel is drawing a distinction between "sex," meaning intercourse, and other sexual conduct. However, sex is not ordinarily restricted to intercourse and commonly embraces a variety of conduct. Counsel's assertion that the statement "was factually inaccurate and of greater prejudicial effect" than the conviction, simpliciter, is not persuasive.

Appellate counsel also asserts that trial counsel "never called appellant to testify." This misleads. The record shows defendant changed his mind about testifying.

Up until late in the People's case, the prosecutor understood defendant was going to testify, as defense counsel had indicated several times. However, during a sidebar, defense counsel stated a concern about his ability to introduce photographs of defendant "because he wasn't sure if he was going to call his client." Based on this revelation, the prosecutor stated she wished to call some witnesses that she had been saving for rebuttal. The day after the People rested, defense counsel asserted that defendant was sick and he had not been able to go over defendant's proposed testimony with him, but the court declined to delay the trial. Then defense counsel indicated he would be calling an officer to impeach Acuna and the jury was brought in. Then the defense rested without calling any witnesses, catching the trial court by surprise. Outside the presence of the jury, defense counsel stated: "This decision of my client not to take the stand was a decision he reached right now, and it is his decision to do it."

Thus, contrary to appellate counsel's assertion, the record does not show trial counsel *failed to call* defendant to testify, it shows that, at the last minute, defendant changed his mind and exercised his personal privilege not to testify. ([*See People v. Carter*, 36 Cal. 4th 1114, 1198 (Cal. 2003)].)

Appellate counsel also recasts the claim regarding revelation of the prior conviction to the prospective jurors as both the denial of a fair jury and a fair trial. However, as stated, on this record trial counsel properly raised the issue before the jury, and by doing so rooted out one juror who would not have listened to defendant's anticipated testimony with an open mind. Thus, counsel's actions helped *ensure* a fair trial, consistent with due process.

Appellate counsel cites authorities that state in some cases the introduction of prejudicial material may deny a defendant a fair trial or due process. For example, he relies on a child sexual assault case, in which a prospective juror who was a Child Protective Services worker stated during voir dire that in her experience all sexual assault claims had been confirmed and no child had lied about sexual assaults. ([*Mach v. Stewart*, 137 F.3d 630, 631-633 (9th Cir. 1997)].) The Ninth Circuit presumed these

>    comments tainted the jury pool.  He also cites a case involving the introduction of irrelevant bad character evidence, where the Ninth Circuit reiterated that "'only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process.'"  ([*McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993)].)
>         These cases are unlike this case, where defense counsel merely told the jury pool defendant would be impeached with a prior molestation conviction.  Defendant's cases do not hold or imply that a defendant cannot be impeached with a prior conviction for a heinous crime, nor that prophylactically revealing such a conviction in voir dire results in an unfair trial or denial of due process.  ([*Cf. People v. Wilson*, 187 P.3d 1041, 1065-66 (Cal. 2008) (rejecting claim that California Evidence Code § 1108 violates due process); *United States v. LeMay*, 260 F.3d 1018, 1025-1027 (9th Cir. 2001) (upholding similar federal rule)].)  In [any] event, defendant did not testify, therefore the issue of his credibility—and the conviction's bearing thereon—never arose.
>         Finally, as the Attorney General points out, a defendant "cannot proceed with the jury selection . . . without objection, gamble on an acquittal, then, after [he is] convicted, claim for the first time the panel was tainted."  ([*People v. Cleveland*, 86 P.3d 302, 32 Cal. 4th 704, 736 (Cal. 2004)].)  This provides yet another reason for rejecting the belated claims about voir dire.

*People v. Vinyard*, No. C061981, 2011 WL 1085177, at *4-5 (Cal. Ct. App. Mar. 24, 2011).

The appellate court's determination was not unreasonable or contrary to clearly established federal law.  28 U.S.C. § 2254(d).  As the court noted, defense counsel's performance was not deficient, but rather amounted to a reasonable tactical decision.  The trial court had ruled that the prosecution may introduce Vinyard's prior conviction if he should testify, and defense counsel was under the impression at the time that Vinyard would testify.  As the court of appeal noted, defense counsel was attempting to "soften the blow" of the introduction of the conviction by introducing it early and on its own terms, within the context of a discussion about the presumption of innocence.  Defense counsel's tactic was successful in that he eliminated one juror who stated that she could not be impartial knowing of Vinyard's prior conviction.  Counsel's performance fell within the "wide latitude" afforded tactical decisions, *Strickland*, 466 U.S. at 689, and accordingly Vinyard cannot establish that counsel's

performance was deficient, *id*. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Nor did counsel's claim that Vinyard had been arrested for "having sex with a 13 year old girl" amount to deficient performance. As the court of appeal noted, that characterization was not necessarily incorrect, and, in any event, counsel followed that statement with an accurate statement of the crime of which Vinyard was convicted.

In addition, Vinyard's claim that trial counsel would not allow him to testify is belied by the record, which shows that Vinyard exercised his privilege not to testify. Moreover, Vinyard's declaration in support of his Petition does not support the contention that defense counsel prevented him from testifying. Rather, Vinyard states that counsel "did not want [Vinyard] to testify" because he "had conferred with other attorneys who told him it would not be a good idea." Defense counsel's recommendation to not testify is not the same as preventing Vinyard from exercising his right to testify in his own defense.

Lastly, Vinyard's attempt to recast defense counsel's revelation of his prior conviction as a denial of his right to a fair trial and due process of law is without merit. As the court of appeal noted, defense counsel's prophylactic introduction of Vinyard's prior conviction during voir dire and subsequent elimination of one juror who could not remain impartial actually "helped *ensure* a fair trial, consistent with due process." Vinyard is therefore not entitled to relief on these interrelated claims.

Claim 4: Ineffective assistance of counsel for failing to cross-examine Acuna about his tattoos

On direct examination, victim David Acuna admitted that he had previously been convicted of tampering with a vehicle. Acuna denied being a member of a gang. The prosecution then questioned Acuna as follows:

[PROSECUTION]:   You have tattoos all over you.

[ACUNA]:   I have tattoos. I'm not a gang member.

[PROSECUTION]:   Why do you have tattoos?

[ACUNA]:   Uh, I like tattoos. I worked at a shop as an apprentice for a while in LA.

[PROSECUTION]:   What kind of tattoos do you have?

[ACUNA]:   I have lots of kinds.

[PROSECUTION]:   Can I see?

[ACUNA]:   Yes, would you like me to take—

[PROSECUTION]:   Just roll up your sleeve, if you want.

[ACUNA]:   I have mom and pop on my hand, for my mom and dad. They wanted me to get—my mom was always wanting something, and I didn't want to get just a Mom, because my dad would say something. So it gave me a good excuse.
A cross that says love, a shark, a spider web that had a heart in it. It was an ex-girlfriend's name in there. That's why it's covered up now.
And some others. A pinup girl right here.
A blue rose, uh, and a mermaid on that side. Garbage Pale [sic] Kids from Stars. Some really crappy ones that friends did when I was a teenager.
Uh, a few others, rats.

[PROSECUTION]:   Lots of animals there, huh?

[ACUNA]:   A few. I like rats.

-10-

Vinyard argues that several tattoos on the back of Acuna's hand were consistent with gang membership and that defense counsel indicated prior to trial that he suspected Acuna was a gang member. According to Vinyard, defense counsel's failure to cross-examine Acuna with respect to his tattoos was not a tactical choice and prejudiced him because, had counsel cross-examined Acuna about them, counsel would have "undermined Acuna's credibility" and "devastated his character."

The California Court of Appeal denied Vinyard relief on this claim as follows:

> Appellate counsel contends trial counsel was incompetent because he did not ask the victim about gang tattoos. This claim is frivolous because it is based on speculation.
> Acuna testified he was not a gang member but conceded he had "lots of kinds" of tattoos and displayed and described some to the jury. Appellate counsel asserts trial counsel should have pressed Acuna about his gang membership.
> The manner of cross-examining a witness falls within a trial attorney's tactical choice. ([*People v. Frierson*, 599 P.2d 587, 25 Cal. 3d 142, 158 (Cal. 1979)].) Trial counsel may have known that Acuna was not in a gang, or may have thought it best to leave the point alone. In the absence of any *evidence in the record* that Acuna was a gang member, there is no reason to suppose Acuna would have changed his testimony under cross-examination or that trial counsel could have proved he was a gang member.
> Appellate counsel's argument rests on speculation that Acuna was a gang member, based on counsel's interpretation of a photograph of Acuna's hand in the record which shows a tattoo. However, there was no testimony at trial about the nature of that tattoo, expert or otherwise, and in the absence of such evidence we will not assume it meant Acuna was a gang member, as does appellate counsel. Therefore we cannot presume on this record that trial counsel acted below professional norms.
> Further, even if Acuna was a gang member, there is no reason to think the outcome would have changed. As counsel argues, street gangs are condemned and Acuna appeared to have a propensity to fight, but there was abundant evidence in the record showing that defendant attacked Acuna without warning and viciously beat him. The failure to articulate prejudice also defeats the claim of incompetence of counsel. ([*See People v. Mitchell*, 78 Cal. Rptr. 855, 872-73 (Cal. Ct. App. 2008)].)

*Vinyard*, 2011 WL 1085177, at *5-6.

As the court of appeal noted, Vinyard's claim is based on speculation and conjecture. Although Vinyard attempts to bolster his claim with argument that the types of tattoos on the

-11-

back of Acuna's hand were indicative of gang membership and case law establishing that tattoos are commonly worn by gang members to demonstrate their affiliation, no such evidence was introduced at trial.  Absent any evidence on the record, there is no basis to presume that Acuna would have changed his story on cross-examination and stated that he was in fact a member of a gang and that his tattoos indicated gang affiliation, or that defense counsel could have otherwise proved Acuna was a gang member.  *See Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008) (speculation is "plainly insufficient to establish" *Strickland* prejudice).  Moreover, counsel's tactical decisions, including refraining from cross-examining witnesses or from asking a particular line of questions, "are given great deference."  *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000).  Vinyard has not established that his counsel's failure to cross-examine Acuna in this regard amounted to deficient performance.  *Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).  Vinyard is therefore not entitled to relief on this claim.

<u>Claim Five: Failure of the prosecution to disclose evidence</u>

Vinyard lastly claims that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and material that may impeach the character or testimony of a witness for the prosecution in violation of *Giglio v. United States*, 405 U.S. 150 (1972).  Vinyard argues that prior to trial the prosecution disclosed several color photos of Acuna, including a photo of the back of Acuna's hand showing several types of tattoos.  Vinyard asserts that the prosecution failed to inform defense counsel that the tattoos on the back of Acuna's hand were "consistent with indicators of criminal street gang membership."  Vinyard

further argues that the prosecution failed to turn over in a timely fashion a CD recording of statements he made to law enforcement authorities.

The California Court of Appeal denied Vinyard relief on this claim, concluding as follows:

> Defendant contends the prosecution team committed discovery violations. The record belies this contention.
> The People moved in limine to preclude impeachment of Acuna absent an offer of proof, and represented that his only prior was a misdemeanor vehicle theft in Los Angeles in 2005. The People also represented: "Defense counsel has mentioned that he believed Victim is a Sureno gang member, and has questioned whether Victim had warrants cleared in Los Angeles." The People argued that warrant status did not show a readiness to do evil, and that the defense had not disclosed evidence that Acuna was a gang member. After the trial court ruled Acuna could be impeached with the vehicle theft conviction, trial counsel stated he did not intend to introduce gang evidence, but wanted to ask prospective jurors whether they would assume that two or three men acting together "might be some sort of gang" or would "consider that a gang." Absent gang evidence, the trial court ruled the issue was moot, *and trial counsel agreed.*
> On appeal, appellate counsel asserts the prosecutor failed to disclose the fact that Acuna was a gang member, as evidenced by his gang tattoos. Counsel concedes the photograph he claims shows Acuna's gang tattoo *was* disclosed. However, he asserts that particular tattoo is a gang tattoo and speculates it is "highly unlikely" that the prosecution team did not know this, yet the prosecutor failed to disclose that *knowledge*.
> The prosecutorial team has a duty to disclose material exculpatory *evidence* to the defense, including impeachment *evidence*. ([*See People v. Jordan*, 133 Cal. Rptr. 434,108 Cal. App. 4th 349, 358-359 (Cal. Ct. App. 2003)].) Even if this rule would apply to an *opinion* about the nature of a tattoo, defendant has not demonstrated that Acuna had any gang tattoos or gang connection, as explained above. . . . Therefore, this contention is baseless.
> Appellate counsel separately contends the prosecutor committed another discovery violation regarding recordings of Acuna and defendant speaking to the police. This contention, too, is baseless.
> Defense counsel represented that before the lunch break on the first day he learned "there was a tape that was recorded while the police officers were in the hospital with both my client and Mr. Acuna, who were in the same room." The prosecutor represented that the prior prosecutor had discovered that recording to the prior defense counsel, and noted that the police report, which had been discovered, referred to the recording. The trial court noted that if defense counsel had not received the recording, he had been on notice of its existence before trial, yet did nothing. The trial court directed the prosecutor to make sure the defense had a copy. At the beginning of the second day of trial, it developed that the recording had been previously delivered to prior defense

-13-

> counsel, but the prosecutor also delivered another copy to new trial counsel "along with the transcripts, so he has both of them now." Defense counsel agreed the issue was resolved, but later complained that the recording was marked "Vinyard" but it also contained an interview of the victim Acuna. Defense counsel conceded the recordings had been discovered to the public defender but had not been transferred after defendant retained counsel, and he eventually agreed with the trial court that there was no discovery problem.
>
> Thus, trial counsel received the material he wanted, conceded it had been disclosed to his predecessor, and stated on the record there was no discovery problem. It appears the public defender's office may have failed in its duty to forward material to new trial counsel, but the record shows no failings by the prosecutorial team regarding the recording.

*Vinyard*, 2011 WL 1085177, at *6-7.

Under *Brady v. Maryland*, the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is "material either to guilt or to punishment." 373 U.S. at 87. Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule requiring disclosure to the defense. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio*, 405 U.S. at 154).

Here, Vinyard concedes that, prior to trial, the prosecution disclosed a color photo of the back of Acuna's hand showing a number of tattoos. Pet. at 35. Vinyard asserts, however, that the prosecution committed a *Brady/Giglio* violation by failing to additionally disclose its knowledge or opinion that the tattoos were indicative of gang affiliation. Pet. at 35-38. First, Vinyard's assertion that the prosecution shared his belief regarding the nature of Acuna's tattoos is mere speculation. Speculation cannot support a *Brady/Giglio* claim. *See United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("mere speculation about materials in the government's files does not require . . . this court under *Brady* to make the materials available for the appellant's inspection" (citation and internal brackets omitted)). Second, *Brady* and *Giglio* require that certain *evidence* be disclosed; Vinyard does not point to, nor has this Court

found on its own review, any case law indicating that the prosecution must also disclose its *opinions* or *knowledge* about the evidence or conduct an investigation of that evidence on behalf of a defendant.  Even if *Brady* and *Giglio* were so extended, there was no evidence on the record that Acuna had any gang-related tattoos or gang affiliation, as discussed *infra*.  Lastly, Vinyard's contention that the prosecution failed to turn over in a timely fashion a CD recording of statements he made to law enforcement authorities is belied by the record.  Accordingly, Vinyard is not entitled to relief on this claim.

## V. CONCLUSION

Vinyard is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327 (2003)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 10, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge